## Palmer, Appellant, *v.* Item Publishing Company.

*Practice—Action for libel—Parties—Amendment—Executors.*

In an action for libel against a publishing company as publisher of a
newspaper where neither the præcipe nor the statement shows whether
the defendant was a corporation or a partnership, and where at the trial
the uncontradicted evidence shows that at the date of the alleged libel the
newspaper was published by the executors of its former owner, who had
not yet completed the administration of the estate, although they had paid
certain of the profits of the newspaper to the children of the testator to
whom it had been bequeathed, it is not error for the trial judge to refuse
to permit the record to be amended, so that the children of the testator
should appear as the parties defendant.

Argued April 1, 1901.    Appeal, No. 39, Jan. T., 1901, by
plaintiff, from order of C. P. No. 3, Phila. Co., Sept. T., 1893,
No. 840, refusing to take off nonsuit in case of Tyndale Palmer
v. Item Publishing Company.    Before McCollum, C. J., Fell,
Brown, Mestrezat and Potter, JJ.    Affirmed.

Trespass to recover damages for libel.

The name of the defendant as it appeared in the præcipe,
summons and statement of claim was " Item Publishing Com-
pany."

At the trial it appeared by the uncontradicted evidence that at the time of the publication in the Item, the paper was published by the executors of Thomas Fitzgerald, its former owner. After this proof was made, the plaintiff moved the court that he be permitted to amend the præcipe, summons and statement of plaintiff's demand by inserting therein the names of the members of the said Item Publishing Company, defendants, to wit: Harrington Fitzgerald, Hildebrand Fitzgerald, Robert L. Fitzgerald, Hildebrand and Robert L. Fitzgerald, trustees for Riter Fitzgerald, deceased, and Harrington Fitzgerald, trustee for Maud Fitzgerald Hubbard, under the last will and testament of Thomas Fitzgerald, deceased, as copartners; so that the said præcipe, summons and statement, and the title and record of the said action shall be and read as follows, to wit: Tyndale Palmer v. Harrington Fitzgerald, Hildebrand Fitzgerald, Robert L. Fitzgerald, Hildebrand and Robert L. Fitzgerald, trustees for Riter Fitzgerald under the last will and testament of Thomas Fitzgerald, deceased, and Harrington Fitzgerald, trustee for Maud Fitzgerald Hubbard under the last will and testament of Thomas Fitzgerald, deceased, copartners, trading as the Item Publishing Company.

Objected to. Objection sustained, and the court declines to allow the amendment. Exception for plaintiff. [1]

The court refused the amendment and entered a nonsuit, which it subsequently refused to take off.

*Errors assigned* were (1) refusal of amendment; (3) refusal to take off nonsuit.

*John C. Bell*, with him *George W. Harkins*, for appellant.— It has long been settled law that a participant in profits, directly as such, is as to third persons a partner, whatever may be the arrangement between the partners: Edwards v. Tracy, 62 Pa. 375; Gibbs's Estate, 157 Pa. 59; Haines & Co.'s Estate, 176 Pa. 354.

The personal representatives of a decedent may only carry on the business for and bind his estate where there is an express direction by will that it shall be done: Laughlin v. Lorenz, 48 Pa. 275; McArdle v. West Phila. Title & Trust Co., 7 Pa. Superior Ct. 328; Burwell v. Mandeville, 2 Howard, 560; Smith v. Ayer, 101 U. S. 320.

An action improperly brought in the firm name may be amended by inserting the names of the individual partners, together with the proper allegation of partnership : Rohrbough, Moore & Co. v. Reed Bros., 57 Mo. 292; Atlantic Glass Co. v. Paulk, 83 Ala. 404; Anglo-American Packing & Provision Co. v. Turner Casing Co., 34 Kan. 340 ; Haggerty v. Strong, 74 N. W. Repr. 1037.

*F. F. Brightly*, for appellee.

OPINION BY MR. JUSTICE BROWN, July 17, 1901:

On November 3, 1893, Tyndale Palmer, the appellant, brought suit against the "Item Publishing Company" for an alleged libel that appeared in the Evening Item, a daily paper published in the city of Philadelphia.  The præcipe fails to disclose whether the plaintiff intended to sue a partnership or a corporation, and in the statement of his cause of action, filed a year after the institution of the suit, no individual names associated in a partnership appear as defendants, and no corporation is named as responsible for the publication of the paper. After the filing of the statement and plea in 1894, nothing more seems to have been done until December, 1898, when the plaintiff, at last apparently realizing that, if he was entitled to a judgment for damages, it would have to be against some person or persons, natural or artificial, moved for leave to so amend the record as to insert as defendants in the suit, Riter Fitzgerald, Harrington Fitzgerald and Hildebrand Fitzgerald, copartners trading as the "Item Publishing Company."   This was refused, and to the refusal of the court to allow the amendment there was no exception, and, of course, is no assignment of error.   Nearly two years later, on October 23, 1900, the case was called for trial, with the "Item Publishing Company" as defendant, but still undesignated as a partnership or corporation.   Plaintiff at once proceeded to prove who had conducted and published the Evening Item at the date of the alleged libel, and showed clearly that, at that time, it was published by the executors of Thomas Fitzgerald, deceased, the former owner of the paper.   The first witness, Harrington Fitzgerald, testified as follows : "Q. What is your business ?  A. I am editor of the Item, managing editor.  Q. By the Item do you mean

the Philadelphia newspaper, the Evening Item? A. Yes, sir.
Q. Newspaper shown witness bearing date October 1, 1892,
and he is asked if that is the paper of which he is the editor.
A. Yes, sir; this is the paper. We published that paper.
That is, my father did. Q. When did your father die? A. He
died in 1891. Q. This was published October 1, 1892. You
are in error in saying that your father published that paper,
aren't you? A. It was published by my father's estate. Hildebrand Fitzgerald and myself were appointed executors and
we continued the publication as executors of Colonel Fitzgerald,
my father. Q. I notice on the editorial page it is specified that
the Item is published every day at 28 South Seventh street,
Philadelphia, Pa., by the Item Publishing Company. Now,
who do I understand you composed the Item Publishing Company October 1, 1892? A. There was no company at all. We
published it as executors of Colonel Fitzgerald. There never
was a company. Q. Whom do you mean by we? A. Myself
and my brother, Hildebrand Fitzgerald. Q. Who were the
owners of the paper at that time? A. The estate of Colonel
Fitzgerald. We represented them. . . . Q. When did you
cease publishing this paper as executors? A. We haven't ceased
publishing the paper as executors. It is still going on. Q. Still
going on as executors? A. Yes, sir. . . . Q. As I understand
it, you and your brother Hildebrand are executors of your
father's estate? A. Yes, sir. Q. And you two, as executors,
have been publishing the Item? A. Yes, sir. Q. What is
your capacity? A. I am manager of the paper—managing editor. Q. And your brother? A. He was business manager.
Q. Has any of your other brothers anything to do with the
publication of the paper? A. Not a word. Q. As to material
or what shall go into the paper? A. Not a word. It is left to
us. We have absolute authority. Q. They have nothing to
do with purchasing, making the bills, or running the paper in
any way? A. Not a thing." The following is an extract from
the testimony of F. F. Brightly, Esq., a member of the Philadelphia bar and counsel for the estate of Thomas Fitzgerald,
deceased: " Q. That means those who own the Item, does it
not?' A. The Item is owned by the estate of Thomas Fitzgerald. Q. In the interest of the five children? A. Whoever is
entitled under the will they distribute to, but they have noth-

ing more to say about the running of the paper than you have.
If you were to go in there and tell Harrington Fitzgerald to
put a certain article in the paper or to buy a new press they
wouldn't do it, and they wouldn't do it for the other children.
Q. The five children own the Item? A. The estate owns the
Item. If they wanted to get ownership of the Item they would
go into the orphans' court and cite the executors to file an ac-
count, but they have never done it and there has never been any
settlement of Thomas Fitzgerald's estate. Q. Does anybody
ever get any share of the profits except the five children?
A. That I don't know. I never ask my clients what they do.
It is not my business. Q. But you know of your own knowl-
edge that the two children represent the estate, as you call it,
or the five children, in running the Item? A. I know that
paper is run by Harrington and Hildebrand Fitzgerald as ex-
ecutors of their father. I knew the father well and I was his
counsel for years before he died."

After having himself so clearly shown that the Evening Item,
at the time of the publication complained of, was published by
the executors of Thomas Fitzgerald, deceased, the plaintiff
asked leave to amend the record so that it would be as follows:
" Tyndale Palmer v. Harrington Fitzgerald, Hildebrand Fitz-
gerald, Robert L. Fitzgerald, Hildebrand and Robert L. Fitz-
gerald, trustees for Riter Fitzgerald under the last will and
testament of Thomas Fitzgerald, deceased, and Harrington Fitz-
gerald, trustee for Maud Fitzgerald Hubbard under the last
will and testament of Thomas Fitzgerald, deceased, copartners,
trading as the Item Publishing Company." This application
was apparently made because the Evening Item had been be-
queathed to the children of the deceased, whom the plaintiff
sought to make defendants, and the executors had, from time to
time, paid portions of the profits to them. But the plaintiff, when
he asked for this amendment, had already shown that the real
publishers of the paper at the time of the alleged libelous publi-
cation were the executors of Thomas Fitzgerald, and not his
children; and the mere fact that, pending the settlement of the
estate, they had paid to the beneficiaries portions of the profits,
is not inconsistent with the plaintiff's own proof that they were
the real publishers of the papers. They were not required to
immediately turn the business over to those to whom it had

been given by the will of the decedent. He had died only the year before, and his estate had not yet been settled. In the process of its settlement, it was left to their judgment to determine on their own responsibility what should be done with the business: 3 Williams on Executors, p. 315, n.; and they had not yet passed the control of it to those whom the plaintiff would now make liable for the alleged injury to him. The executors, as such, continued the management of the paper, and could continue to do so until called to account by the beneficiaries under the will or creditors of the estate.

The last amendment asked for was properly disallowed. No reason was given for refusing it. Whether the learned trial judge thought it was too late to bring in these alleged defendants, or that the amendment was not such as ought to be allowed under the statute, we do not know, and it is not required of us to say whether either or both of these reasons would have been good; it is sufficient to know that to have allowed the plaintiff to make certain individuals defendants, after having himself shown that others were responsible for the wrong of which he complains, would have been manifest error. If the amendment had been allowed, a judgment on a verdict against the defendants brought in under it, could not be sustained. The three assignments of error are overruled and the judgment is affirmed.